UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT J. KUNZ,

                                        Plaintiff,

                                                              6:14-CV-01471
v.
                                                              (MAD/TWD)
ROGER BRAZILL, SANDRA J. DOORLEY,

                                        Defendants.
_____

APPEARANCES:

ROBERT J. KUNZ
03-B-1730
Plaintiff, *pro se*
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

## I.      INTRODUCTION

        The Clerk has sent to the Court for review the Complaint in this action brought by

Plaintiff Robert J. Kunz under 42 U.S.C. § 1983 against Assistant District Attorney, Sandra J.

Doorley ("ADA Doorley"), who prosecuted him in a rape case in 2002, and Public Defender,

Roger Brazill ("Brazill"), who served as Plaintiff's defense counsel.  (Dkt. No. 1.)  Plaintiff, who

has not paid the filing fee for this action, has filed an application for leave to proceed *in forma*

*pauperis* ("IFP Application").  (Dkt. No. 2.)  Plaintiff has also filed a motion for appointment of

counsel.  (Dkt. No. 4.)  Plaintiff is presently incarcerated at Marcy Correctional Facility.

## II. IFP APPLICATION

As to Plaintiff's IFP Application, the Court finds that Plaintiff has demonstrated economic need and has filed the inmate authorization form required in the Northern District to proceed with this matter *in forma pauperis*. (Dkt. No. 3.) As a result, Plaintiff's IFP Application is granted.

## III. INITIAL SCREENING

Having found that Plaintiff meets the financial criteria for commencing this case *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).[1]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief can be granted; or . . . seeks monetary relief against a person who is immune

---

[1] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

from such relief." 28 U.S.C. § 1915A.

In reviewing a *pro se* complaint, the Court has the duty to show liberality towards *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the Plaintiff has stated "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court should construe the factual allegations in the light most favorable to Plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged    but it has not "show[n] that the pleader is entitled to relief." *Id*. at 679 (quoting Federal Rule of Civil Procedure 8(a)(2)). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotations marks and alterations omitted). Allegations that "are so

vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

## IV. PLAINTIFF'S COMPLAINT

Plaintiff claims arise out of his arrest and conviction on what he describes as a rape charge brought against him in 2002. (Dkt. No. 1 at ¶ 6.) Plaintiff has alleged that his conviction was obtained by ADA Doorley in violation of his constitutional rights to due process and equal protection under Article 1, §§ 6 and 11 of the New York State Constitution and his rights to due process and equal protection under the Fifth and Fourteenth Amendments to the United States Constitution by her failure to do a rape kit or DNA analysis; denial of his Miranda rights; destruction of medical records showing that the alleged victim had lied about being raped; a Brady violation; improper treatment as a predicate felon when he was a first time offender; concealment of exculpatory evidence and a deliberate failure to search for the truth; a lack of legally sufficient evidence to convict Plaintiff; and denial of a hearing under New York Criminal Procedure Law § 730.30 to determine his mental competency to stand trial. *Id.* at ¶¶ 6-7 and pp. 7, 9-10, 12-16.

Plaintiff also claims that Defendant Brazill rendered ineffective assistance of counsel in

violation of his Sixth Amendment rights by allowing a police officer to read from his notes at a

Huntley hearing and telling Plaintiff to shut-up when he told Brazill that the officer was lying;

failing to talk to witnesses or get reports Plaintiff and his wife had asked Brazill to obtain before

trial; failing to act on Plaintiff's request for a § 730.30 hearing; and generally throwing the case

and selling Plaintiff out "down the river without a paddle." *Id*. at pp. 8, 11-12.

Plaintiff requests relief in the action in the form of setting aside the judgment of

conviction against him or, in the alternative, an award of damages in the amount of One-Hundred

and Twenty-Million Dollars against Defendants. *Id*. at ¶ 8 and p. 10.

## V.    ANALYSIS

Plaintiff brings this action against Defendants pursuant to 42 U.S.C. § 1983.  (Dkt. No. 1

at ¶ 1.)  For the reasons explained below, the Court concludes that Plaintiff's Complaint should

be dismissed on initial review for multiple reasons.

### A.    Statute of Limitations

The § 1983 claims asserted against Defendants by Plaintiff, and any proposed amendment

thereof, are futile because the applicable statutes of limitations have expired.[2]  Claims arising

under 42 U.S.C. § 1983 are governed by state statutes of limitations.  *Wilson v. Garcia*, 471 U.S.

261, 266-267 (1985).  In New York, such claims are governed by the general three-year

---

[2] Where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on § 1915(e)(2)(B) review even though the statute of limitations bar is an affirmative defense. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint); *Mercier v. Pataki*, No. 1:06-CV-0435 (GLS/DRH), 2006 WL 1133198, at *2, 2006 U.S. Dist. LEXIS 29739, at *5 (N.D.N.Y. Apr. 21, 2006) (dismissing plaintiff's complaint on initial review on statute of limitations grounds).

limitations period governing personal injury claims. *Owens v. Okure*, 488 U.S. 235, 251 (1989). Accrual of the claim, however, is a question of federal law. *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997).

Under federal law, generally, a claim arising under 42 U.S.C. § 1983 "accrues" when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Island Beach*, 296 F.3d 76, 80 (2d Cir. 2002). Plaintiff's claims accrued at the time of Defendants' alleged violation of his constitutional rights in connection with the prosecution and defense of the 2002 rape charge. Assuming Plaintiff's actual conviction did not occur until 2003,[3] the three year statute of limitations under § 1983 would have run years before Plaintiff commenced this action in December of 2014.

If Plaintiff's claim against Brazill could be construed as one for legal malpractice, the claim would be barred by the applicable three year statute of limitations for legal malpractice, which begins to run on "the day an actionable injury occurs," regardless of when a plaintiff discovers the injury.[4] *See* N.Y. C.P.L.R. § 214; *Protostorm, LLC v. Antonelli, Terry, Stout &*

---

[3] Although Plaintiff does not include the date of his conviction in his Complaint, the Court takes judicial notice of DOCCS's public administrative records revealing that Plaintiff was originally received into DOCCS custody on conviction of the class B felony of sexual conduct against a child on July 23, 2003. *See* www.nydoccslookup.doccs.ny.gov/GCA00P00/WIQ1/WINQ00 (site last visited on January 21, 2015). *See Holloway v. MacFarland*, No. 07-2032 (AET), 2007 WL 3376683, at *1 n.1, 2007 U.S. Dist. LEXIS 83775, at *2 n.1 (D.N.J. Nov. 13, 2007) (Court takes judicial notice of the fact that Plaintiff was released from the custody of the DOC on August 9, 2007 where Plaintiff's confinement status was available publicly on the DOC website).

[4] Under the continuous representation doctrine, the statute of limitations is tolled for as long as "there is a mutual understanding [between attorney and client] of the need for further representation on the specific subject matter underlying the malpractice claim." *McCoy v. Fenman*, 755 N.Y.S.2d at 693, 700 (2002). There are no allegations in the Complaint, even construed liberally, from which the Court could infer that Defendant Brazill continued to represent Plaintiff on the

*Kraus, LLP*, 834 F. Supp. 2d 141, 155 (E.D.N.Y. 2011) (quoting *McCoy v. Feinman*, 755

N.Y.S.2d 693, 700 (2002)).

**B.      Failure to State a Claim Against Defendants under § 1983**

Plaintiff has also failed to state a claim against either of the Defendants under § 1983,

which provides in relevant part that

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes to
> be subjected, any citizen of the United States . . . to the deprivation
> of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must allege that the challenged

conduct (1) was "committed by a person acting under color of state law," and (2) "deprived [the

plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United

States."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d

545, 547 (2d Cir. 1994)).  "The purpose of § 1983 is to deter state actors from using the badge of

their authority to deprive individuals of their federally guaranteed rights and to provide relief to

victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

1.      Brazill

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its

reach merely private conduct, no matter how discriminatory or wrongful."[5]  *Am. Mfrs. Mut. Ins.*

---

criminal charge beyond his conviction.

[5] A plaintiff is required to allege state action on the part of the defendants in his
complaint; and where he fails to do so, a court may dismiss an action under § 1915(e).
*See O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *5, 2010 U.S. Dist.
LEXIS 11639, at *19 (N.D.N.Y. Feb. 10, 2010).

*Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted).   A

plaintiff must therefore allege facts showing that a defendant was either a state actor or a private

party acting under color of state law.  *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d

Cir. 2002).  Private actors have been found to engage in "state action" when they are "willful

participant[s] in joint activity with the State or its agents."  *Adickes v. S.H. Kress & Co.*, 398 U.S.

144, 152 (1970) (citing *United States v. Price*, 383 U.S. 787, 794 (1966)).

Private attorneys, whether court appointed or privately retained, are generally not liable

under § 1983.  *See Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-

established that court-appointed attorneys performing a lawyer's traditional functions as counsel

to defendant do not act 'under color of state law' and therefore are not subject to suit under 42

U.S.C. § 1983.") (citation omitted); *accord Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)

(public defender not acting under color of state law when performing attorney's traditional

functions as defense counsel).  Plaintiff's conclusory allegation that ADA Doorley and Brazill

destroyed a doctor's report indicating that the victim had lied about being raped, without specific

factual allegations in support, is not enough to make a plausible showing that Brazill wilfully

participated with ADA Doorley in the violation of Plaintiff's constitutional rights.  *See*

*Twombly*, 550 U.S. at 570 (conclusory statements without any supporting factual allegations are

insufficient to state a claim).

2.     ADA Doorley

"Because a public prosecutor cannot zealously perform the prosecutorial duties of the

office if compelled to work under the constant threat of legal reprisals, such official is shielded

from liability for civil wrongs by the doctrine of absolute immunity."  *Hill v. City of New York*,

8

45 F.3d 653, 656 (2d Cir. 1995).  The Second Circuit explained in *Hill*, *id*. at 660-61, that:

> In determining whether absolute immunity obtains, we apply a "functional approach," looking at the function being performed rather than to the office or identity of the defendant.  *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268-69 (1993).  State prosecutors are entitled to absolute immunity for that conduct "intimately associated with the judicial phase of the criminal process."  *Imbler* [*v. Pachtman*, 424 U.S. 409, 430 (1976)].  Thus, a district attorney is absolutely immune from civil liability for initiating a prosecution and presenting the case at trial.  *Id*. at 430-31; *Buckley*, 509 U.S. at 273.  Such official is also immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, *Buckley*, 509 U.S. at 273, or determining which offenses are to be charged.  *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993).  Prosecutorial immunity from § 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate."  *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).

Absolute immunity is defeated only when a prosecutor is engaged in investigative, rather than prosecutorial, functions.  *Bernard v. County of Suffolk*, 356 F.3d 495, 502-03 (2d Cir. 2004).  Although Plaintiff has alleged that ADA Doorley failed to order a rape kit or DNA testing, there are no allegations in the Complaint that she was involved in, or as prosecutor had a duty to Plaintiff to be involved in, the investigation.[6]  (Dkt. No. 1 at ¶ 6.)  ADA Doorley is, therefore, entitled to absolute immunity with regard to the claims asserted against her in the Complaint.

### C.    *Heck v. Humphrey*

Plaintiff's § 1983 claims are also barred under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), in which the Supreme Court held that

> in order to recover damages for allegedly unconstitutional

---

[6]  Under *Hill*, 45 F.3d at 662, failure to turn over Brady material, as alleged by Plaintiff, has been found to fall within the type of prosecutorial functions entitled to absolute immunity.

> conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizant under § 1983. (emphasis in original).

Plaintiff's various claims regarding the investigation surrounding his being charged with rape, the prosecution of the charge, ineffective assistance of defense counsel represent challenges that fall squarely within the ambit of *Heck*. Were Plaintiff to succeed on any theory espoused by him, he would necessarily call into question the validity of the conviction he is challenging in this action. Because Plaintiff has failed to show that his conviction has been overturned, his § 1983 claims are barred under *Heck* unless and until such time as Plaintiff's conviction is overturned or his sentence is invalidated.

### D.     Conclusion Regarding Plaintiff's § 1983 Claims

Plaintiff has failed to state a § 1983 claim against Defendants Brazill and ADA Doorley Brazill because public defenders do not act under color of state law, *Polk Cnty.,* 454 U.S. at 325, and ADA Doorley because she is entitled to prosecutorial immunity with regard to the claims asserted by Plaintiff. Even if Plaintiff had stated claims against Brazill and ADA Doorley under § 1983, or for legal malpractice against Brazill, or could do so if granted leave to amend, those claims would be barred by the applicable statutes of limitations. Plaintiff's § 1983 claims are also presently barred under *Heck*.

Ordinarily, given Plaintiff's *pro se* status, the Court would recommend that he be given

an opportunity to amend prior to an outright dismissal. *See Cuoco*, 222 F.3d 112. However, in this case the Court finds that amendment would be futile, both because of the bar imposed by the statutes of limitations, and the bar imposed by *Heck*, absent a future invalidation of Plaintiff's conviction or sentence.

### E. Claims Under the New York State Constitution

Plaintiff claims Defendants violated his rights to due process and equal protection under Article 1, §§ 6 and 11 of the New York State Constitution. Inasmuch as the Court is recommending that Plaintiff's federal claims against Defendants be dismissed, it also recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims without prejudice subject to refiling in state court and to reconsideration in the event the District Court does not accept this Court's recommendation for dismissal of Plaintiff's § 1983 claims without leave to amend. *See Kolari v. New York Presbyterian Hosp.*, 445 F.3d 118, 120 (2d Cir. 2006).

### F. Motion for Appointment of Counsel

Plaintiff has moved for appointment of counsel. (Dkt. No. 4.) Even if the Court were not recommending dismissal of Plaintiff's Complaint without leave to amend, a more fully developed record would be necessary before an assessment can be made as to whether counsel should be appointed. *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir 1997) (court must look to the likelihood of merit of the underlying dispute in determining whether to appoint counsel). Therefore, the motion is denied. The denial is without prejudice so that Plaintiff will not be precluded from making a subsequent motion for appointment of counsel in the event the District Court allows the action to proceed.

### G.      Docket Nos. 7-10

Docket Nos. 7-10 are January 16, 20, and 23, 2015, letters from Plaintiff containing a second request for a default judgment against Defendants (Dkt. Nos. 7, 8 and 10), asking to have Defendants arrested for tampering with evidence in his criminal trial (Dkt. No. 7), and allowing Plaintiff time before the Court to show the Court papers relevant to his claim. (Dkt. Nos. 7-10.) As explained to Plaintiff in this Court's Text Order denying his initial motion for a default judgment, this case is presently under initial review pursuant to 28 U.S.C. § 1915.  (Dkt. No. 6.) Defendants have not been served with the Complaint and have no present obligation to respond to it.  The Court denies Plaintiff's newly filed motions for a default judgment as well as the other relief requested in Docket Nos. 7-10 without prejudice.

**WHEREBY**, it is hereby

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* is **GRANTED** (Dkt. No 2); and it is

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED** as follows:

(1) that Plaintiff's § 1983 claims be dismissed without leave to amend as barred under *Heck v. Humphrey*, 512 U.S. 477 (1994) and the applicable statutes of limitations, and for failure to state a claim; and

(2) the District decline to exercise supplemental jurisdiction over Plaintiff's state law claims under Article 1, §§ 6 and 11 of the New York State Constitution; and it is hereby

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No 4) is **DENIED** without prejudice; and it is further

**ORDERED** that Plaintiff's motions for a default judgment and other relief requested in Docket Nos. 7-10 are **DENIED** without prejudice; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions in *Mercier v. Pataki*, No. 1:06-CV-0435 (GLS/DRH), 2006 WL 1133198 (N.D.N.Y. Apr. 21, 2006); *Holloway v. MacFarland*, No. 07-2032 (AET), 2007 WL 3376683 (D.N.J. Nov. 13, 2007); and *O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948 (N.D.N.Y. Feb. 10, 2010) in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: January 29, 2015
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge


Not Reported in F.Supp.2d, 2007 WL 3376683 (D.N.J.)
**(Cite as: 2007 WL 3376683 (D.N.J.))**

C

Only the Westlaw citation is currently available.NOT
FOR PUBLICATION

United States District Court,
D. New Jersey.
Everett HOLLOWAY, Plaintiff,
v.
Kathryn MACFARLAND, et al., Defendants.

Civil No. 07-2032 (AET).
Nov. 13, 2007.

Everett Holloway, Bridgeton, NJ, pro se.

Keith S. Massey, Jr., Office of the NJ Attorney General, Trenton, NJ, for Defendants.

### MEMORANDUM & ORDER

ANNE E. THOMPSON, U.S.D.J.

**\*1** This matter is before the Court upon Defendants Kathryn MacFarland, William Fauver, Jack Terhune, Roy Hendricks, Donald Mee, Jr., Joann Anderson, Erin Earnest, Karen Balicki, SCO Narissa Goldsborough, Sergeant Claudy Augustin, and Lieutenant Stephen Miagpiong's (collectively, "Defendants"), Motion to Dismiss Plaintiff Everett Holloway's Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). The Court has decided this Motion after considering Defendants' unopposed submission and without oral argument pursuant to Fed.R.Civ.P. 78. For the reasons set forth below, Defendants' Motion is granted.

### BACKGROUND

Plaintiff Holloway was an inmate housed within the New Jersey Department of Corrections ("DOC") system from approximately August 20, 1982 to August 9, 2007.[FN1] (Ex. A, Defs.' Mot. to Dismiss.) On May 1, 2007, the Court received Plaintiff's Complaint seeking declaratory and injunctive relief against Defendants in order to enforce a purported settlement agreement reached between Plaintiff and DOC officials in *Holloway v. Fauver,* 01-1831(AET). The settlement agreement allegedly mandated prison accommodations for Plaintiff, who is blind. Although the Court notes that the parties differ over whether a settlement agreement was, in fact, reached, the determination of whether there was one in place is not germane to the disposition of this Motion.

> FN1. Because Plaintiff's confinement status is available publicly on the DOC website, the Court takes judicial notice of the fact that Plaintiff was released from the custody of the DOC on August 9, 2007. Fed.R.Evid. 201(c).

Service of process was effected on Defendants on August 8, 2007 and August 17, 2007. On September 14, 2007, Defendants filed this Motion.

### DISCUSSION

*A. Standard of Review*

When evaluating a motion to dismiss for lack of subject matter jurisdiction, a court must accept a plaintiff's allegations as true, except to the extent that federal jurisdiction is dependent on certain facts. *Haydo v. Amerikohl Mining, Inc.,* 830 F.2d 494, 496 (3d Cir.1987). In determining whether subject matter jurisdiction exists, the court's inquiry may extend beyond the pleadings. *Armstrong World Indus., Inc. v. Adams,* 961 F.2d 405, 410 n. 10 (3d Cir.1992).

Federal jurisdiction is limited by the requirement imposed by Article III, section 2, of the United States Constitution that an action must be an actual case or controversy. *Id.* at 410. In order to satisfy the actual case or controversy requirement, "an action must

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3376683 (D.N.J.)
**(Cite as: 2007 WL 3376683 (D.N.J.))**

represent '(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy so as to sharpen the issues for judicial resolution.' " *Id.* (quoting *Int'l Bhd. of Boilermakers v. Kelly,* 815 F.2d 912, 915 (3d Cir.1987)).

*B. Analysis*

The Court finds that Plaintiff's release from custody on August 9, 2007 renders his Complaint moot, because it seeks the enforcement of a settlement agreement meant to govern his accommodations in prison. As there no longer remains an actual case or controversy, and adjudication by the Court will not afford Plaintiff any meaningful relief, Defendants' Motion to Dismiss is granted.

*CONCLUSION*

**\*2** For the foregoing reasons, and for good cause shown,

IT IS on this 9th day of November, 2007,

ORDERED that Defendants' Motion to Dismiss Plaintiff Holloway's Complaint [12] is GRANTED; and it is further

ORDERED that this case is closed.

D.N.J.,2007.
Holloway v. MacFarland
Not Reported in F.Supp.2d, 2007 WL 3376683 (D.N.J.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2006 WL 1133198 (N.D.N.Y.)
**(Cite as: 2006 WL 1133198 (N.D.N.Y.))**

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
George MERCIER, Plaintiff,
v.
George PATAKI, and Thomas Voelkle, Defendants.

No. 1:06-CV-0435 (GLS)(DRH).
April 21, 2006.

George Mercier, Plaintiff, pro se.

### *DECISION & ORDER*

GARY L. SHARPE, District Judge.

**\*1** Presently before the Court is a complaint alleging a claim under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971), filed by Plaintiff George Mercier.[FN1] Dkt. No. 1. Plaintiff, a resident of Nevada, also filed an application to proceed *in forma pauperis.* Dkt. No. 2. Plaintiff has not paid the statutory filing fee for this action.

> FN1. The Court notes that Plaintiff previously filed two other actions in this District. *See Mercier v. Central Intelligence Agency, et al.,* 5:04-CV-0429 (NAM)(GJD); *Mercier v. The Governor of the State of New York,* 1:06-CV0350 (GLS)(DRH). In both cases, the complaint was dismissed for failure to state a claim upon which relief may be granted. *See* 5:04-CV-0429, Dkt. No. 3; 1:06-CV-0350, Dkt. No. 3.

For the reasons stated below, Plaintiff's complaint is dismissed for failure to state a claim upon which relief may be granted.

### I. Background

In his complaint, Plaintiff claims that in 1995, Defendant Pataki, the Governor of New York, and Defendant Voelkle, the Chief of Police of Brighton, New York, conspired to steal, and to try to have Plaintiff "put away." Dkt. No. 1, Complaint at ¶ 1. Plaintiff alleges that "Yesterday, a visible effect of that agreement surfaced" when Plaintiff returned to his apartment complex and observed an individual from maintenance removing items from an apartment. *Id.* at ¶ 2. Plaintiff apparently claims that this individual has stolen various items from Plaintiff's apartment.[FN2] *Id.* at p. 3. Plaintiff seeks the return of the alleged stolen objects. *Id.* at p. 5. For a complete statement of Plaintiff's claims, reference is made to the complaint.

> FN2. Plaintiff claims that "[o]ver the years, items stolen have been underwear, bluberries [sic], credit card files, business correspondence, Federal Court files, some hardware and tools, air conditioning supplies, tax forms and correspondence ... [and] two occupational business licenses." Dkt. No. 1, Complaint at p. 3. Plaintiff also claims that he is missing his "IRAQ and OPEC files," which Plaintiff claims "were background files designed to start the draftsmanship of two books." *Id.*

### II. Discussion

Consideration of whether a *pro se* plaintiff should be permitted to proceed *in forma pauperis* is a two-step process. First, the court must determine whether the plaintiff may commence the action without prepaying, in full, the $250.00 filing fee. The court must then consider whether the causes of action stated in the complaint are frivolous or malicious, or if

Not Reported in F.Supp.2d, 2006 WL 1133198 (N.D.N.Y.)
**(Cite as: 2006 WL 1133198 (N.D.N.Y.))**

they fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). The Second Circuit has held that dismissal is also appropriate when an affirmative defense, such as the statute of limitations, is plain from the plaintiff's pleadings. *Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir.1995).

In this case, the Court has determined that Plaintiff has satisfied the test of economic need and would be financially eligible to proceed *in forma pauperis. See* Dkt. No. 2.

Turning to the second inquiry, Plaintiff filed a complaint alleging a claim under *Bivens. Bivens* actions, although not precisely parallel, are the analog to a 42 U.S.C. § 1983 action against state actors,[FN3] and the constitutional standard of review is the same for either type of action. *See Chin v. Bowen,* 833 F .2d 21, 24 (2d Cir.1987) (noting that there is a "general trend in the appellate courts" to incorporate § 1983 law into *Bivens* cases) (citation omitted); *see also Lombard v. Board of Education,* 784 F.Supp. 1029, 1036 (E.D.N.Y.1992) (same). *Bivens* actions, as well as actions brought under § 1983, are subject to a three-year statute of limitations. *Platsky v. Studeman et al.,* 829 F.Supp. 567, 570 (E.D.N.Y.1993) (citations omitted). Here, Plaintiff has named only state officials as Defendants and does not allege any wrongdoing on the part of any federal officials. Thus, the Court deems this matter as seeking relief pursuant to § 1983.

> FN3. 42 U.S.C. § 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *German v. Fed. Home Loan Mortg. Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 95-CV-0272, 1995 WL 236245, *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (§ 1983 "is the vehicle by which individuals

may seek redress for alleged violations of their constitutional rights.") (citation omitted).

**\*2** The "applicable statute of limitations for § 1983 actions arising in New York requires claims to be brought within three years ." *Pinaud v. County of Sufolk,* 52 F.3d 1139, 1156 (2d Cir.1995). In *Pino v. Ryan,* the Second Circuit noted that "ordinarily" the court should not raise the statute of limitations *sua sponte,* however, it was appropriate where the injuries complained of occurred more than five years prior to the filing of the complaint and there were *no* applicable tolling provisions as a matter of law. 49 F.3d at 54.

In this case, as noted, Plaintiff claims that in 1995, Defendants Pataki and Voelkle conspired to steal, and to try to have Plaintiff "put away." Dkt. No. 1, Complaint at ¶ 1. Thus, the alleged conspiracy occurred, if at all, during or before 1995, which is more than *ten* years before this complaint was filed. It appears that Plaintiff was not subject to any alleged continuing violation(s), and there are no events which would toll the statute of limitations. Plaintiff's claims are therefore time-barred.

Since Plaintiff's claims are barred by the applicable statute of limitations, Plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) because the complaint fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915.

Plaintiff's remaining claims relate to alleged thefts that occurred in his apartment in Las Vegas, Nevada. Las Vegas is in the District of Nevada. Thus, if the case was not subject to dismissal based on the statute of limitations, it would have been transferred to the District of Nevada.

WHEREFORE, it is hereby

ORDERED, that Plaintiff's application to proceed

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1133198 (N.D.N.Y.)
**(Cite as: 2006 WL 1133198 (N.D.N.Y.))**

*in forma pauperis* is GRANTED, and it is further

ORDERED, that this action is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B) for the reasons stated above, and it is further

ORDERED, that the Clerk serve a copy of this Order on Plaintiff.

It is hereby certified that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

N.D.N.Y.,2006.
Mercier v. Pataki
Not Reported in F.Supp.2d, 2006 WL 1133198 (N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 502948 (N.D.N.Y.)
**(Cite as: 2010 WL 502948 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.
Aimee O'NEIL and M.O., Plaintiffs,
v.
Catherine BEBEE; and Oswego City School District,
Defendants.

No. 5:09-CV-1133 (GTS/DEP).
Feb. 10, 2010.

Amy O'Neil, Minetto, NY, pro se.

### DECISION and ORDER
Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court in this a *pro se* civil rights action filed by Aimee O'Neil ("Plaintiff") is her motion to proceed *in forma pauperis,* her motion for a stay, and her two separate letter requests. (Dkt. Nos. 1, 2, 3, 4, and 5.) For the reasons discussed below, Plaintiff's motion to proceed *in forma pauperis* is granted; her Complaint is *sua sponte* dismissed with prejudice due to its frivolous, pursuant to 28 U.S.C. § 1915(e) (2)(B); her motion for a stay and two letter requests are denied as moot; and she is directed to show cause, within thirty (30) days of the date of this Decision and Order, as to why the Court should not issue an Order prohibiting her from filing any future *pro se* actions in this Court without prior leave of the Court.

## I. PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS*

After carefully reviewing Plaintiff's papers in support of her motion to proceed in forma pauperis, the Court finds that she qualifies for *in forma pauperis* status. (*See* Dkt. No. 2.) As a result, the Court grants Plaintiff's motion to proceed *in forma pauperis.*[FN1]

> FN1. Plaintiff should note that, although her motion to proceed *in forma pauperis* has been granted, she would still be required to pay other fees that she incurred in the action, including copying and/or witness fees, if this action were to proceed.

## II. REVIEW OF PLAINTIFF'S COMPLAINT

### A. Court's Duty to *Sua Sponte* Review Complaint

Pursuant to 28 U.S.C. § 1915(e), when a plaintiff seeks to proceed *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B).[FN2] Thus, there is a responsibility on the Court to determine that a complaint may be properly maintained in the District before it may permit a plaintiff to proceed with an action *in forma pauperis. Id.*

> FN2. *See also Monestime v. FCC,* 09-CV-0296 (N.D.N.Y. Mar. 24, 2009) (Suddaby, J.) ("[F]ederal courts may (and have) *sua sponte* dismissed *pro se* civil rights complaints (in *in forma pauperis* proceedings) where the allegations therein are fantastic, fanciful, delusional, and/or paranoid. Indeed, this Court has done so."); *Henderson v. Clover Field,* 08-CV-0504, 2008 WL 2405705 (N.D.N.Y. June 11, 2008)

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 502948 (N.D.N.Y.)
**(Cite as: 2010 WL 502948 (N.D.N.Y.))**

(McCurn, J., adopting Report-Recommendation of Lowe, M.J.); *Mercier v. Mercier,* 07-CV-0523, 2007 WL 1582267, at *1-2 (N.D.N.Y. May 25, 2007) (Kahn, J.).

In determining whether an action is frivolous, the Court must look to see whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Although the Court has a duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility on the Court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis* in order to prevent abuses of the process of the Court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as discourage the waste of judicial resources.

**C. Legal Standard Governing Dismissals for Failure to State Claim**

It has long been understood that a dismissal for failure to state a claim, pursuant to *Fed.R.Civ.P. 12(b)(6)*, may be based on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under *Fed.R.Civ.P. 8(a)(2)*; or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga County,* 549 F.Supp.2d 204, 211, nn. 15-16 (N.D.N.Y.2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review) [citations omitted].

**\*2** With regard to the first ground, *Fed.R.Civ.P. 8(a)(2)* requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." *Fed.R.Civ.P. 8(a)*(2) [emphasis added]. By requiring this "showing," *Fed.R.Civ.P. 8(a)(2)* requires that the pleading contain a short and

plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the merits." *Id.* at 212, n. 18 [citations omitted].[FN3]

> FN3. *See also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ( "Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F .2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

The Supreme Court has long characterized this pleading requirement under *Fed.R.Civ.P. 8(a)(2)* as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Id.* at 212, n. 20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id.* at 212, n. 21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id.* at 213, n. 22 [citations omitted]; *see also Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under *15 U.S.C. § 1. Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 502948 (N.D.N.Y.)
**(Cite as: 2010 WL 502948 (N.D.N.Y.))**

state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968-69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation [s]." *Id .* at 1965 [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [citations omitted].[FN4]

> FN4. *See also Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ( "[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.* ").

As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[FN5] It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific* facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007) [citation omitted; emphasis added]. That statement was merely an ab-

breviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[FN6]

> FN5. *See, e.g., Jacobs v. Mostow,* 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

> FN6. For example, in *Erickson,* the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care. *Erickson,* 127 S.Ct. at 2199-2200. Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication (a

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 502948 (N.D.N.Y.)
(Cite as: 2010 WL 502948 (N.D.N.Y.))

requirement that had been imposed by the district court). This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief. Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alves,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000). The important thing is that, in *Erickson,* even the *pro se* plaintiff was required to allege some sort of fact.

**\*3** Finally, in reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. This standard is applied with even greater force where the plaintiff alleges civil rights violations and/or where the complaint is submitted *pro se.* However, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed),[FN7] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards in Fed.R.Civ.P. 8, 10 and 12.[FN8] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10, and 12 are procedural rules that even *pro se* civil rights plaintiff must follow.[FN9] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [cita-

tions omitted].

FN7. *Sealed Plaintif v. Sealed Defendant # 1,* 537 F.3d 185, 191 (2d Cir.2008); *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983).

FN8. *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972), *cert. denied,* 411 U.S. 935, 93 S.Ct. 1911 (1973) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi,* 469 F.2d at 692) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi* within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995); *accord Wachtler v. Herkimer County,* 35 F.3d 77, 82 (2d Cir.1994).

FN9. *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 1984 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 2541, n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) ("*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *accord, Traguth,* 710 F.2d at 95; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if her mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

**C. Summary of Plaintiff's Complaint**

On October 8, 2009, Plaintiff filed her Complaint in this action. (Dkt. No. 1.) The text in the body of the Complaint is single spaced, and its pages are unnumbered. (*Id.*) In only four of the twelve pages (specifically, pages two through five) of the Complaint does Plaintiff make any attempt at numbering paragraphs. (*Id.* at 2-5.) Even when she does so, she does not number the paragraphs consecutively. (*Id.*) Most of the paragraphs are not limited as far as practicable to a single set of circumstances, but extend to numerous sets of circumstances. (*Id.* at 4-10.) In the caption, Plaintiff names herself, as well as her daughter, M.O., as Plaintiffs in the action, and Catherine Bebee and the Oswego City Schools as the Defendants in the action. (*Id.* at 1.) However, in the body of the Complaint, Plaintiff identifies a host of other Defendants, at one point also seemingly naming M.O. as a Defendant. (*Id.* at 3-12.)

With regard to her claims, construed with the utmost of special leniency, Plaintiff has commenced this action pursuant to 42 U.S.C. § 1983, asserting several civil rights violations. (Dkt. No. 1, Attach. 1 [Civil Cover Sheet].) As summarized by Plaintiff, for example, her claims encompass "tax evasion, fraud, perjury, libel, defamation, intentional infliction of emotional distress, malpractice, negligence, invasion of privacy, violation of unlawful search and seizure, deprivation of due process, and violation of equal rights under the law ... based upon section U.S. 42 section 1983 and 1876 .... "[FN10] (Dkt. No. 1 at 10.)

FN10. Plaintiff is advised that there is no Section 1876 in volume 42 of the United States Code. Plaintiff also references Section 1871 in the first paragraph of her Complaint,

which is unrelated to civil rights, and instead addresses international cooperation and coordination of the National Science Foundation with foreign policy. *See* 42 U.S.C. § 1871.

In support of these claims, Plaintiff asserts factual allegations regarding a broad range of events occurring from the summer of 2000 to the spring of 2001, including (but not limited to) conspiracy, bribery, kidnaping, and perjury by a social worker. (*See generally* Dkt. No. 1.) More specifically, Plaintiff alleges that, between approximately August of 2000 and April of 2001, Defendant Bebee, a social worker employed by the Oswego City School District, (1) conspired with six other individuals (including members of "the Baker family," who presumably reside in or near Oswego, New York) to kidnap Plaintiff's daughter on December 22, 2000, from a children's hospital in St. Petersburg, Florida, where she was receiving orthopedic medical treatment from Dr. Sheila Love, and transport her to New York, and then (2) perpetrated a fraud on an Oswego County Court in a proceeding presided over by Judge James McCarthy in April of 2001. (*Id.*)

**\*4** Plaintiff further alleges that, in carrying out this conspiracy, Defendant Bebee committed the following acts: (1) she acted at the behest, and/or for the benefit, of Plaintiff's ex-husband (apparently named William Wallace), who purports to be the father of Plaintiff's daughter but who has not proved his paternity; (2) she accepted a bribe of one hundred thousand dollars ($100,000) from someone in, or associated with, the Baker family, which she intended to use for the purpose of a transgender operation; (3) she invaded Plaintiff's privacy by relying on a sealed child protection report documenting the orthopedic injury to Plaintiff's daughter, and by causing Plaintiff's home to be searched illegally; (4) she not only kidnaped Plaintiff's daughter but her two other children, whom she smuggled to a third state before bringing them to New York; (5) she falsely accused Plaintiff of child

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 502948 (N.D.N.Y.)
**(Cite as: 2010 WL 502948 (N.D.N.Y.))**

abuse; (6) she helped to somehow restrict Plaintiff's parental rights in court through use of fraud, slander and due process violations; and (7) she caused Plaintiff's daughter to be placed with the Baker family in New York, against the recommendation of her daughter's pediatrician. (*Id.*)

As relief, Plaintiff demands $1,000,000.00 in compensatory and punitive damages. (*Id.* at 12.)

**D. Analysis of Complaint**

As an initial matter, the Court notes that the form of Plaintiff's Complaint violates several federal and local rules. *See, e.g.,* Fed.R.Civ.P. 10(a) (requiring caption to name all defendants); Fed.R.Civ.P. 10(b) (requiring that all paragraphs be numbered sequentially, and that each paragraph be limited as far as practicable to a single set of circumstances); N.D.N.Y. L.R. 10.1(a) (requiring text in body of complaint to be double-spaced, and pages to be consecutively numbered). However, in light of the special solicitude that should ordinarily be afforded *pro se* litigants (and because these rule violations pale in comparison to Plaintiff's other pleading deficiencies, described below), the Court will overlook these rule violations. The Court does this with some hesitancy, given Plaintiff's familiarity with the pleading requirements established the local and federal rules, due to her extraordinary litigiousness (*see, infra,* Part IV of this Decision and Order).

The Court notes also that Plaintiff has filed this action not only on her own behalf, but apparently on behalf of her child, M.O., who is a minor. (*See* Dkt. No. 1, at 3; Dkt. No. 2, at 2 [listing M.O. as a dependent].) As Plaintiff previously has been repeatedly advised, M.O. may not proceed on her own behalf. *See* Fed.R.Civ.P. 17(c).[FN11] Nor is a *"pro se"* non-attorney permitted to represent another person in federal court litigation. *Berrios v. New York City Housing Auth.,* 564 F.3d 130, 132-133 (2d Cir.2009). Accordingly, M.O. is dismissed as a Plaintiff in this action.

FN11. In *O'Neil v. Van Auser* and *O'Neil v. Ponzi-Flett,* Plaintiff named M.O. as a plaintiff, and in both cases she was advised that M.O. must be properly represented before commencing an action in federal court. *See O'Neil v. Van Auser,* 5:09-CV-0594, Memorandum-Decision and Order, at 1, n. 1 (N.D.N.Y. filed July 21, 2009) (Mordue, C.J.); *see also O'Neil v. Ponzi-Flett,* 5:09-CV-0983, Report-Recommendation, at 2 (N.D.N.Y. filed Sept. 9, 2009) (Lowe, M.J.).

With regard to Plaintiff's claims, many of the the factual allegations throughout the Complaint are conclusory, unsubstantiated and rambling; and there are few detailed allegations clearly identifying individual(s), dates, and specific acts of the asserted misconduct forming the basis for alleged constitutional violations. Succinctly stated, the manner in which Plaintiff has set forth her claims is not short and plain, but so verbose, disjointed, vague and confusing that it is nearly impossible for the Court to assess them, and surely impossible for the Defendants to respond to them and prepare for trial.[FN12] However, in an extension of special solicitude to Plaintiff, and an effort to provide a more detailed explanation as to why Plaintiff's Complaint is frivolous, the Court will attempt to address the bulk of Plaintiff's claims in more detail.

FN12. *See Rest v. Weissmane,* 08-CV-0340, 2008 WL 5191733, at *5 (N.D.N.Y. Dec. 10, 2008 (Kahn, J. adopting on *de novo* review Report-Recommendation of Lowe, M.J.) (dismissing claims that "[e]ven construed with the special solicitude," were confusing, ambiguous, vague and/or otherwise unintelligible under Federal Rules of Civil Procedure 8(a)(2) and 10(b)").

**1. Section 1983 Pleading Requirements**

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 502948 (N.D.N.Y.)
**(Cite as: 2010 WL 502948 (N.D.N.Y.))**

**\*5** Generally, to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person or entity acting under color of state law and (2) such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993); *see also Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003) (quoting *West v. Atkins,* 487 U.S. 42, 48 [1988] ).

**a. Person or Entity**

State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.,* 95-CV-1500, 1995 WL 743719, at *2 (N.D.N.Y. Dec. 6, 1995) (Pooler, J.) (citing *Velaire v. City of Schenectady,* 862 F.Supp. 774, 776 (N.D.N.Y.1994) (McAvoy, C.J.) [citation omitted] ). It is the plaintiff's duty to allege state action on the part of the defendants named in a complaint; and a court may dismiss an action under 28 U.S.C. § 1915(e) where a plaintiff fails to plead such a nexus. *See, e.g., Jenkins v. Murphy,* 08-CV-0921, 2008 WL 4596197, at *2 (N.D.N.Y. Oct. 14, 2008) (McCurn, J.) [collecting cases]; *Humphrey v. Rescue Mission,* 05-CV-0795, 2005 WL 1661826, at *2 (N.D.N.Y. July 14, 2005) (Mordue, J.) [collecting cases].[FN13]

> FN13. *See also DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, 311 (2d Cir.) (affirming dismissal of complaint where plaintiff failed to include allegations of state action in complaint), *modified on other grounds,* 520 F.2d 409 (2d Cir.1975); *Lawson v. Abrams,* 84-CV-4325, 1988 WL 49244, at *4 (E.D.N.Y. May 6, 1988) (dismissing as frivolous pro se complaint where plaintiff failed to allege state action on part of defendants), *accord, Carollo-Gardner v. Diners Club,* 628 F.Supp. 1253, 1256-57 (E.D.N.Y.1986).

Here, the action is brought against Catherine Bebee and her employer, the Oswego City Schools.

Examples of Plaintiff's allegations against Bebee are as follows:

> D. Invasion of privacy-Catherine Bebee violated, denied, and /or abridged, my privacy under the colors of state laws by misusing and abusing her job position and leaving her jurisdiction, *Freeman v. Rideout,* 808 F 2d 949 (2d Cir.1986).

> 3. Negligence-because Catherine Bebee failed to verify the validity of a court order, paternity order, and her own job duties before leaving the state of New York, Catherine Bebee is also negligent because the injury to [M.O.] was unfounded and legally sealed, in which Catherine Bebee, a social worker, has total access to a founded or unfounded report, and even if it was founded, it does not entitle Catherine Bebee to travel to the State of Florida as the state of Florida, in their own jurisdiction, has their own social workers, to handle their own investigations based upon findings of Dr. Sheila Love, as Sheila Love was assigned to treat patient [M.O.] Catherine Bebee is not assigned, she has no jurisdiction over [M.O.] and there needs to be a clear, definitive ruling stating Catherine Bebee has no jurisdictional authority over said child, and will never have any. It is very important to establish this factor, because the pattern of retaliation is only continuing so said child cannot attend public school....

> (Dkt. No. 1, at 3-4.)

Catherine Bebee, while under oath, under the penalties of perjury, in front of Judge James McCarthy, stated she was paid a large sum of money to travel to Florida and take said children after a careful conspiracy and several meetings to carefully plan out this act. Catherine Bebee stated she was paid an excessive $100,000.00 and was going to use this money for the purpose a transgender operation, in which she felt entitled to undertake by causing trauma and harm to my home and my family.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 502948 (N.D.N.Y.)
**(Cite as: 2010 WL 502948 (N.D.N.Y.))**

*6 (Dkt. No. 1, at 5.)

For the sake of brevity, the Court will assume that Plaintiff has alleged facts plausibly suggesting that Defendant Bebee was acting in her capacity as a state actor when she committed the acts in question. Again, the Court does this with some hesitancy, given the fact that it is not clear in what position with the school district Defendant Bebee was acting which would have conferred upon her duties regarding Plaintiff's daughter during the time in question (or even that she was employed by a municipal entity rather than some private non-profit organization).[FN14]

> FN14. Indeed, the Court notes that Plaintiff alleges that Defendant Bebee had no professional relationship with Plaintiff's daughter. (Dkt. No. 1 at 5-6.)

More problematic is Plaintiff's claim against the Oswego City School District. As an initial matter, to the extent that Plaintiff seeks to impose liability on the City of Oswego or the Oswego City School District, there are no factual allegations plausibly suggesting liability by either entity. Moreover, "[a]lthough municipalities are within the ambit of section 1983, municipal liability does not attach for actions undertaken by city employees under a theory of *respondeat superior.*" *Birdsall v. City of Hartford,* 249 F.Supp.2d 163, 173 (D.Conn.2003) (citing *Monell v. New York City Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 [1978] ).

However, despite the fact that *respondeat superior* liability does not lie, a municipal entity can be held accountable for a constitutional violation which has occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers ... [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels ." *Monell,*

436 U.S. at 690-91, 98 S.Ct. at 2036. Such municipal liability can be alleged in a case as this in various ways including, *inter alia,* through allegation of an officially adopted rule or widespread, informal custom plausibly suggesting "a deliberate government policy or failing to train or supervise its officers." *Bruker v. City of New York,* 337 F.Supp.2d 539, 556 (S.D.N.Y.2004) (citing and quoting *Anthony v. City of New York,* 339 F.3d 129, 140 [2d Cir.2003] ). A plaintiff may also allege such municipal liability by alleging facts plausibly suggesting that municipal officers have acquiesced in or condoned a known policy, custom or practice. *Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.), *cert. denied, County of Schenectady v. Jeffes,* 531 U.S. 813, 121 S.Ct. 47 (2000); *Wenger v. Canastota Cent. Sch. Dist.,* 95-CV-1081, 2004 WL 726007, at *3 (N.D.N.Y. Apr. 5, 2004) (Scullin, C.J.).

Here, the Complaint is devoid of factual allegations that plausibly suggest liability against the Oswego City School District. Again, it is unclear that Defendant Bebee is employed by that entity (as opposed to being employed by Oswego County or some private non-profit organization). For example, at least one portion of the Complaint alleges that Defendant Bebee is employed by *Oswego County.* (*See* Dkt. No. 1, at 9-10.) In addition, and more importantly, there are no factual allegations plausibly suggesting that, at the time of the alleged constitutional violations, Defendant Bebee was acting pursuant to an official custom, policy, or practice of the Oswego City School District. Rather, the Complaint rather explicitly alleges that Defendant Bebee was acting outside of her authority and pursuant to employment by the Baker Family.

*7 For all these reasons, Plaintiff's claims against Defendant Oswego City School District are dismissed for frivolousness.

**b. Right, Privilege, or Immunity Secured by the Constitution**

As to the constitutional violations asserted in

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 502948 (N.D.N.Y.)
**(Cite as: 2010 WL 502948 (N.D.N.Y.))**

Plaintiff's Complaint, references to constitutional rights and amendments are generally confined to five of the twelve pages of the Complaint. (*See generally* Dkt. No. 1, at 1-3, 5, 10.) More specifically, construed with the utmost liberality, Plaintiff's Complaint asserts that Defendant Bebee violated her following three constitutional rights: (1) her right to privacy under the Fourth Amendment; (2) her right to procedural due process under the Fourteenth Amendment; and (3) her right to equal protection of the laws under the Fourteenth Amendment. (*Id.*) In addition, Plaintiff asserts a conspiracy claim under 42 U.S.C. § 1983. (*Id.* at 2, 7-10.) [FN15]

> **FN15.** The Court notes that Plaintiff also asserts several claims arising under New York State law, including (but not limited to) negligence, fraud, defamation, invasion of privacy, malpractice, breach of confidentiality, and intentional infliction of emotional distress. (*Id.* at 3-6, 10.) However, because a cause of action under 42 U.S.C. § 1983 may not be premised solely on a violation of state law (but requires a violation of either the United States Constitution or a federal statute), and because the Court would decline to exercise supplemental jurisdiction over any of Plaintiff's pendent state law claims, the Court need not, and will not, analyze these claims in this Decision and Order.

With regard to Plaintiff's right-to-privacy claim under the Fourth Amendment, Plaintiff alleges that this violation occurred when the following acts occurred: (1) her home, in an unspecified city and state, was illegally searched at an unspecified time by an unspecified individual; and (2) Defendant Bebee relied on a sealed child protection report documenting the orthopedic injury to Plaintiff's daughter, in her effort to kidnap Plaintiff's daughter, transport her from Florida to New York, and/or somehow restrict Plaintiff's parental rights. (*Id.* at 1-2, 4-5.) The first act is simply too vague and speculative to plausibly suggest

a Fourth Amendment violation by Defendant Bebee. The second act, as alleged, does not give rise to a Fourth Amendment violation for three reasons: (1) it is highly questionable whether the act plausibly constitutes a violation of N.Y. Social Services Law § 422-a, which permits disclosure of a sealed child protection report by a social services commissioner under certain circumstances; (2) even if the act does plausibly constitute such a violation, a violation of state law does not, in and of itself, give rise to a violation of 42 U.S.C. § 1983, which requires a violation of either the United States Constitution or a federal statute; [FN16] and (3) even if the act does give rise to a constitutional violation, it is highly questionable whether Plaintiff has standing to assert that violation, because the report concerned Plaintiff's *daughter* (and Plaintiff is as a *pro se* litigant who cannot litigate the claim on behalf of her daughter).

> **FN16.** In addition, the Court notes that New York Social Service Law § 419 grants immunity to individuals, officials and institutions for making good faith reports and other related actions from any liability, civil or criminal. N.Y. Soc. Serv. Law § 419.

With regard to Plaintiff's due process claim under the Fourteenth Amendment, Plaintiff alleges that Defendants failed to give any her notice and an opportunity to be heard (including an opportunity to present evidence and witnesses such as medical experts), presumably in a legal proceeding in Family Court in Oswego County to terminate Plaintiff's parental rights and/or modify her visitation rights. (*Id.* at 1-2.) This vague allegation does not allege facts plausibly suggest how much process was due because it does not allege in what type of proceeding Plaintiff was denied procedural protections (e.g., a modification of Plaintiff's visitation rights, a termination of Plaintiff's parental rights, a temporary removal of Plaintiff's daughter with the written consent of the person legally responsible for her care, a preliminary order of removal of Plaintiff's daughter after a petition

is filed, a preliminary order of removal of Plaintiff's daughter before a petition is filed, or an emergency removal of Plaintiff's daughter without a court order). Indeed, based on Plaintiff's other factual allegations, it is plausible that the proceeding was permitted to be conducted *ex parte*. It is even conceivable that Plaintiff did not even have standing to participate in the proceeding.

**\*8** With regard to Plaintiff's equal protection claim under the Fourteenth Amendment, Plaintiff alleges that Defendant Bebee treated Plaintiff unequally under the law by exceeding the scope of her job duties to (1) invade Plaintiff's privacy, (2) travel to Florida to kidnap her daughter, and (3) "impact" Plaintiff by traumatizing her daughter, and depriving her daughter of medical treatment in New York State. (*Id.* at 2-5.) To assert an equal protection claim, a plaintiff must allege facts plausibly suggesting that she was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. Where the alleged classification involves a "suspect class" or "quasi-suspect class," the alleged classification is subject to "strict scrutiny" by a court. Otherwise, the alleged classification is subject to only "rational basis scrutiny." To survive such scrutiny, the alleged classification need only be "rationally related" to a "legitimate state interest."

Here, Plaintiff has not even alleged facts plausibly suggesting there has been any classification at all in this case, i.e., that she was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. (Rather, she alleges that Defendant Bebee acted differently compared to other social workers.) Moreover, even if Plaintiff had alleged facts plausibly suggesting that she was treated differently from others, she has not alleged facts plausibly suggesting that the alleged discrimination she experienced was not rationally related to a legitimate state interest (i.e., protecting Plaintiff's daughter

by returning her to lawful custodians in New York State).

With regard to Plaintiff's conspiracy claim under 42 U.S.C. § 1983, she alleges that, between approximately August and December of 2000, Defendant Bebee conspired with numerous members of "the Baker family" to kidnap Plaintiff's daughter on December 22, 2000, from a children's hospital in St. Petersburg, Florida, and transport her to New York. (*Id.* at 2, 7-10.) More specifically, Plaintiff alleges that this conspiracy possessed the following characteristics: (1) it was perpetrated by seven individuals; (2) it was motivated, in part, by revenge against Plaintiff for causing the "drug bust" of one of the conspirators; (3) it was motivated also by the certain other conspirators' need for money to satisfy illegal gambling debts and to pay for a transgender operation; (4) it was preceded by witness tampering and extortion by one of the conspirators, and the making of a death threat to Plaintiff by another of the conspirators while Plaintiff was approximately eight months pregnant; (5) it culminated in the making of a bribe of $100,000 to Defendant Bebee, and a bribe of an unspecified amount to two other conspirators; and (6) it was followed by tax evasion by at least five of the seven conspirators. (*Id.*)

**\*9** To sustain a conspiracy claim under § 42 U.S.C.1983, a plaintiff must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights ... secured by the Constitution or the federal courts." *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995) (citations and internal quotation marks omitted). Conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983. *See Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.), *cert. denied,* 464 U.S. 857 (1983).

Here, the only factual allegation contained in

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 502948 (N.D.N.Y.)
**(Cite as: 2010 WL 502948 (N.D.N.Y.))**

Plaintiff's Complaint that plausibly suggests a "meeting of the minds" between Defendant Bebee and any of the other six alleged conspirators is her receipt-at an unspecified place and time from an unidentified individuals-of $100,000 for a transgender operation. (Dkt. No. 1, at 2, 7-10.) These pleading deficiencies-which render his claim vague and conclusory-are fatal to Plaintiff's conspiracy claim. *See Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990), *cert. denied,* 499 U.S. 937 (1991); *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987); *Warren v. Fischl,* 33 F.Supp.2d 171, 177 (E.D.N.Y.1999).

For all these reasons, Plaintiff's claims against Defendant Bebee are dismissed for frivolousness.[FN17]

> FN17. The Court notes that Plaintiff's Complaint also raises the specter of a claim under a federal statute known as the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. 104-191, 110 Stat.1936 (1996). HIPAA was enacted by Congress in order to protect against unwarranted disclosure of health records and information, authorizing the Secretary for Health and Human Services "to make final regulations concerning the privacy of individually identifiable health information." *Barnes v. Glennon,* 05-CV-0153, 2006 WL 2811821, at *5 (N.D.N.Y. Sept. 28, 2006) (*citing and quoting Nat'l Abortion Fed'n v. Ashcroft,* 03-CV-8695, 2004 WL 555701, at *2 [S.D.N.Y. Mar. 19, 2004], and 42 U.S.C. §§ 1320d through 1320d-8). Courts addressing claims similar to the claim implicitly raised by Plaintiff have determined that, in light of the availability of monetary and criminal penalties to be assessed by the Secretary of Health and Human Services or the State, *see* 42 U.S.C. § 1320d-6(b), the statute does not confer an independent private right of action. *See Barnes,* 2006 WL 2811821, at *5-6; *Cassidy v. Nicolo,*

> 03-CV-6603, 2005 WL 3334523, at *5-6 (W.D.N.Y. Dec. 7, 2005); *see also Pecou v. Forensic Committee Personnel,* 06-CV-3714, 2007 WL 1490450, at *2 (E.D.N.Y. Jan. 5, 2007). Courts presented with the issue also have held that, because HIPAA does not create a private right, it cannot be privately enforced via Section 1983. *Adams v. Eureka Fire Protection Dist.,* 09-CV-1315, 2009 WL 3352032, at *1 (8th Cir. Oct. 15, 2009); *see also, Auld v. Davidson,* No. 08-3110-TC, 2009 WL 1559777, at *1 (D. Or. June 2, 2009); *Howard v. Douglas County Jail,* No. 09-3085-SAC, 2009 WL 1504733, at *4 (D.Kan. May 28, 2009); *Frazier v. Arkansas Dept. of Corr.,* 07-CV-00184,2009 WL 856990, at *9 (E.D.Ark. Mar. 30, 2009). Accordingly, the Court finds that any alleged HIPAA violations will not support Plaintiff's Section 1983 claim, and, to the extent her Complaint is construed as asserting a cause of action under HIPAA, the claim is subject to dismissal as a matter of law.

**2. Statute of Limitations**

Even when construed with the utmost of special leniency, the events giving rise to Plaintiff's claims occurred between approximately August of 2000 (when the conspirators started meeting about Plaintiff) and April of 2001 (when Defendant Bebee perpetrated a fraud on an Oswego County Court in a proceeding presided over by Judge James McCarthy in April of 2001. (Dkt. No. 1, at 3-8, 10.)

"The applicable statute of limitations for § 1983 actions arising in New York requires claims to be brought within three years ." *Pinaud v. County of Suffolk,* 52 F.3d 1138, 1156 (2d Cir.1995) [citations omitted]; *see also Connolly v. McCall,* 254 F.3d 36, 40-41 (2d Cir.2001) ("[Plaintiff's] federal constitutional claims, brought pursuant to 42 U.S.C. § 1983, are governed by New York's three-year statute of

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 502948 (N.D.N.Y.)
**(Cite as: 2010 WL 502948 (N.D.N.Y.))**

limitations for personal injury actions ....") [citations omitted]. A claim arising under Section 1983 accrues "when the plaintiff knows or has reason to know of the harm that he seeks to redress." *Connolly v. McCall,* 254 F.3d 36, 41 (2d Cir.2001) [internal quotation marks and citation omitted], *accord, Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir.2002) [internal quotation marks and citations omitted].

Here, the three-year limitations period started running, at the latest, in April of 2001, and expired, at the latest, in April of 2004. Under the circumstances, the applicable three-year limitations period clearly bars Plaintiff's claims. The Court notes that Plaintiff, an experienced *pro se* litigant who has had similar if not identical claims barred due to untimeliness, was, when she filed this action, undoubtedly aware of this limitation period. *See, e.g., O'Neil v. Oswego County Family Court,* 07-CV-6016, Decision and Order, at 11-12 (W.D.N.Y. filed Feb. 20, 2007); *O'Neil v. Fulton Police Dept.,* 07-CV-6045, Decision and Order, at 1, 16 (W.D.N.Y. filed Feb. 28, 2007); *O'Neil v. N.Y.S. Dept. of Educ.,* UID 2007-038-526, Decision (N.Y. Ct. Cl. filed March 30, 2007).

**\*10** For this alternative reason, Plaintiff's claims against Defendants are dismissed for frivolousness.

**3. Res Judicata and Collateral Estoppel**
In the following three cases, Plaintiff's claims against Defendant Bebee and Oswego City Schools were previously dismissed on multiple grounds, including untimeliness: (1) *O'Neil v. Oswego County Family Court,* 07-CV-6016, Decision and Order, at 10-12 (W.D .N.Y. filed Feb. 20, 2007) (dismissing Plaintiff's claims against Defendants Bebee and Oswego City Schools based on untimeliness and lack of federal jurisdiction); (2) *O'Neil v. State of New York,* 07-CV-0071, Decision and Order, at 6-7 (N.D.W. Va. filed July 19, 2007) (dismissing Plaintiff's claims against Defendants Bebee and City of Oswego for lack of federal jurisdiction); and (3) *O'Neil v.. N.Y.S. Dept. of Educ.,* UID 2007-038-526,

Decision (N.Y. Ct. Cl. filed March 30, 2007) (dismissing Plaintiff's claims against Defendant Bebee as untimely pursuant to, *inter alia,* New York State's three-year statute of limitations governing certain of those claims).

For this alternative reason, Plaintiff's claims against Defendants are dismissed for frivolousness.

**4. Nature of Dismissal**
Generally, when a *pro se* action is dismissed *sua sponte,* the plaintiff should be allowed to amend his or her complaint once before their complaints are dismissed. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, such leave is not required where any amended complaint would be futile due to the substantive nature of the fatal flaws in the original complaint.[FN18] Here, the flaws in Plaintiff's Complaint are substantive in nature such that better pleading would not cure them. As a result, the Court finds that it would be futile to afford Plaintiff an opportunity to amend her Complaint.

> FN18. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") [citation omitted].

**III. PLAINTIFF'S MOTION FOR STAY AND TWO LETTER REQUESTS**
Plaintiff's motion to stay the proceedings is rendered moot by the Court's dismissal of Plaintiff's action with prejudice due to its frivolousness. As a result, that motion is denied as moot. In the alternative, that motion is denied as procedurally improper in that

Not Reported in F.Supp.2d, 2010 WL 502948 (N.D.N.Y.)
**(Cite as: 2010 WL 502948 (N.D.N.Y.))**

it is unsupported by an affidavit, as required by Local Rule 7.1(a). Moreover, that motion is denied on the second alternative ground that it is unsupported by a showing of cause. (Dkt. No. 3.) Specifically, Plaintiff appears to be requesting that this action be stayed "in order to criminally arrest employees required to mandate abuse and were allegedly involved in human trafficking,...." (*Id.* at 2.) Finally, as for Plaintiff's two letters requesting that the Clerk issue summonses for service upon Defendants, in light of the foregoing, those requests are denied as moot. (Dkt.Nos.4, 5.)

### IV. ORDER TO SHOW CAUSE

A review of Plaintiff's litigation history reveals that, in addition to filing the current action in this District, she has filed five (5) other *pro se* civil rights actions in this District: (1) *O'Neil v. Diskey,* 5:09-CV-0540, Complaint (N.D.N.Y. filed on May 7, 2009) (transferred by Suddaby, J., to the Middle District of Florida on May 20, 2009); (2) *O'Neil v. Van Auser,* 5:09-CV-0594, Complaint (N.D.N.Y. filed on May 20, 2009) (dismissed for lack of subject matter jurisdiction by Mordue, C.J., on July 21, 2009); (3) *O'Neil v. Ponzi-Flett,* 5:09-CV-0983, Complaint (N.D .N .Y. filed on Aug. 28, 2009) (dismissed for frivolousness by Suddaby, J., on February 9, 2010); (4) *O'Neil v. Ponzi,* 5:09-CV-0985, Complaint (N.D.N.Y. filed on Aug. 28, 2009) (dismissed as duplicative by Suddaby, J., on Oct. 22, 2009); and (5) *O'Neil v. Pasco County,* 5:09-CV-1175, Complaint (N.D.N.Y. filed on Oct. 21, 2009) (transferred by Suddaby, J., to the United States District Court for the Middle District of Florida on December 7, 2009).

**\*11** Moreover, a review of the Federal Judiciary's Public Access to Court Electronic Records ("PACER") reveals that Aimee O'Neil has filed some forty (40) *pro se* civil rights actions in other federal courts across the country. These actions include thirty-two (30) *pro se* civil actions filed in the Western District of New York in 2007 (eighteen of which were filed in the same week). These actions also include seven (7) *pro*

*se* civil actions filed in the Northern District of West Virginia. These actions also include two (2) *pro se* civil actions filed in the Middle District of Florida. Finally, these actions include one (1) *pro se* civil actions filed in the Western District of Michigan.

All of Plaintiff's actions filed in the Western District of New York were *sua sponte* dismissed with prejudice as frivolous. *See O'Neil v. Fulton Police Dept.,* 07-CV-6045, Decision and Order, at 7-18 (W.D.N.Y. filed Feb. 28, 2007). Similarly, all of Plaintiff's actions filed in the Northern District of West Virginia were *sua sponte* dismissed with prejudice as frivolous. *See O'Neil v. Cornerstone Homes,* 07-CV-0069, 2007 WL 2116410, at *1-5 (N.D.W.V. July 19, 2007), aff'd by *O'Neil v. Oswego County Dept. of Soc. Servs.,* 258 F. App'x 581 (4th Cir. Dec. 17, 2007). As for Plaintiff's three remaining actions in other districts, two were *sua sponte* dismissed (the third having been filed merely a month ago). Finally, it is important to note that many of the forty-six (46) *pro se* civil actions that Plaintiff has filed have been duplicative in nature. Indeed, the current action is duplicative in nature. *See, supra,* Part II.3. of this Decision and Order.

Under such circumstances, a federal district court may impose a reasonable filing restriction on a *pro se* litigant in that particular court, pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1651(a), and its inherent authority to control and manage its own docket so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demon-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 502948 (N.D.N.Y.)
**(Cite as: 2010 WL 502948 (N.D.N.Y.))**

strated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ("[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08-CV-0330, 2008 WL 1767067, at *1 (N.D.N.Y. Apr. 16, 2008) (McCurn, J.).

**\*12** It is worth noting that at least two federal district courts have imposed such a restriction on Plaintiff. *See O'Neil v. Fulton Police Dept.,* 07-CV-6045, Decision and Order, at 18-20 (W.D.N.Y. filed Feb. 28, 2007); *O'Neil v. Cornerstone Homes,* 07-CV-0069, 2007 WL 2116410, at *6 (N.D.W.V. July 19, 2007), *aff'd by O'Neil v. Oswego County Dept. of Soc. Servs.,* 258 F. App'x 581 (4th Cir. Dec. 17, 2007).

Because of her history of filing vexatious, harassing or duplicative lawsuits, Plaintiff is hereby warned that the Court will not tolerate the filing of frivolous actions by her in the future. As a result, she is directed to show cause, within thirty (30) days of the date of this Decision and Order, as to why this Court should not issue an Order barring her from filing any future *pro se* actions without first obtaining leave of the Court. In the event that Plaintiff fails to show such cause, she will be prohibited from filing, in this Court, any action *pro se* (that is, without counsel), without prior leave of the Court, pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1651(a) and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED;** and it is

further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is *sua sponte* **DISMISSED with prejudice** due to its frivolousness, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i),(ii); and it is further

**ORDERED** that Plaintiff's motion for a stay (Dkt. No. 3) is **DENIED;** and it is further

**ORDERED** that Plaintiff's requests that the Clerk issue summonses for service upon the Defendants (Dkt.Nos.4, 5) are **DENIED;** and it is further

**ORDERED** that *Plaintiff is hereby directed to* **SHOW CAUSE,** *within* **THIRTY (30) DAYS** *of the date of this Decision and Order, why this Court should not issue an Order barring her from filing any future pro se actions in this Court without first obtaining leave of the Court. In the event that Plaintiff fails to show such cause, she will be* **PROHIBITED** *from filing, in this Court, any action pro se (that is, without counsel) without prior leave of the Court, pursuant to* 28 U.S.C. § 1651(a) *and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.*

*The Court hereby certifies, for purposes of* 28 U.S.C. § 1915(a) *(3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.*

N.D.N.Y.,2010.
O'Neil v. Bebee
Not Reported in F.Supp.2d, 2010 WL 502948 (N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.